UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of

UNITED STATES LINES, INC.

---

NORMAN M. KEATING, et al.,

    Appellants,

-against-

UNITED STATES LINES, INC., et al,

    Appellees.

No. 04 Civ. 6614 (LTS)(FM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/07/06

## OPINION AND ORDER

APPEARANCES:

WATERS & KRAUS, LLP
 By: Charles Siegel
3219 McKinney Ave.
Dallas, TX 75204

*Attorneys for Appellant George Murphy*

THE MARITIME ASBESTOSIS LEGAL CLINIC
 By: Alan Kellman
645 Griswold, Suite 1570
Detroit, MI 48226

*Attorneys for Appellants John White and Norman Keating*

NAGEL RICE & MAZIE, LLP
 By: Herbert Waldman
301 S. Livingston Ave., Suite 201
Livingston, NJ 07039-3991

*Attorneys for Appellee*

LAURA TAYLOR SWAIN, United States District Judge

Appellants George Murphy ("Murphy"), John White ("White"), and Norman Keating ("Keating") appeal an Order of the United States Bankruptcy Court for the Southern District of New York (Gonzalez, B.J.), dated June 21, 2004, expunging Appellants' proofs of claim filed in In re United States Lines, Chapter 11 case No. 86B 12238 (Bankr. S.D.N.Y.). The Court has jurisdiction of the instant appeal pursuant to 28 U.S.C. § 158(a)(1). For the following reasons, the Order of the Bankruptcy Court is affirmed.

## BACKGROUND

In November 1986, United States Lines, Inc., and United States Lines, (S.A.) Inc. (collectively "U.S. Lines" or "Debtor"), filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. (Memorandum Decision Granting Trust's Motions to Expunge Proofs of Claim, annexed to Siegel Decl., Ex. B at 3, ("Expungement Opinion").) Pursuant to court orders of May 16, 1989, and February 6, 1990, approving the Debtor's plan of reorganization, U.S. Lines was reorganized and a Trust was established that became the successor-in-interest of the companies. The purpose of the Trust was to administer claims of asbestos-related injuries and other bodily injuries brought against U.S. Lines. Faced with the prospect of ongoing claims for late-manifesting injuries, the Trust made an application to the Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") in April 2000 for an order establishing, among other things, a rolling bar date, which set the time frame within which potential future claimants could file proofs of claim.

On May 23, 2000, pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Court granted the Trust's application and issued an order that imposed

a 180-day rolling bar date for all late-manifesting claims (the "Rolling Bar Date"). (Order Establishing Rolling Bar Date, Appellant White's and Keating's Brief, Ex. 1, ("Rolling Bar Date Order").) The Rolling Bar Date Order provides that, any individual who has "come to hold a Claim against the Debtors that shall have manifested after the date of this Order . . . shall file a proof of such Claim together with any supporting documents with the Clerk of the Bankruptcy Court . . . before the 181st day following manifestation of the underlying bodily injury which is the basis for such Claim." (Id. at 3.) In other words, an individual had 180 days to file a claim against the Trust after the underlying bodily injury manifested itself.

Appellants, who were all merchant mariners who served on voyages aboard vessels owned and operated by U.S. Lines, filed proofs of claim, asserting asbestos-related injuries as follows: Keating filed his claim on November 27, 2002, White filed his claim on March 25, 2003, and Murphy filed his claim on April 8, 2003. The Trust moved to expunge these claims, arguing that Appellants' underlying physical injuries had manifested themselves more than 180 days prior to the interposition of the claims, and that the claims were thus untimely under the Rolling Bar Date Order. After full briefing and a hearing, Bankruptcy Judge Gonzalez granted the Trust's motion to expunge all three Appellants' claims. Judge Gonzalez concluded that each of the claims had been filed more than 180 days after the relevant bodily injury manifestation date. He also concluded that it was appropriate to use New York law for guidance in interpreting the injury manifestation language used in the Rolling Bar Date Order, that a jury determination as to when the relevant manifestation occurred was not required, that the Rolling Bar Date Order was adequate and did not violate due process rights, and that an excusable neglect argument interposed by Appellant Murphy had been untimely raised.

Appellant Murphy argues that the Bankruptcy Court erred in using New York law as guidance for interpreting the injury manifestation date provision of the Rolling Bar Date Order; Murphy asserts that the Bankruptcy Court should instead have looked to claim accrual principles under federal maritime law or Florida state law. Murphy also contends that the Bankruptcy Court erred in concluding that the interpretation and application of the manifestation date language of the order was a core issue not requiring a jury determination and that the Rolling Bar Date Order was constitutional. Finally, Murphy argues that the Bankruptcy Court erred in refusing to consider his excusable neglect argument.[1] Keating and White argue that the Bankruptcy Court erred in applying New York law and should instead have applied federal maritime law and, in the alterative, that their claims were timely filed even under New York law. Additionally, the Trust moves to strike portions of Keating's and White's Reply brief on the instant appeal.

## DISCUSSION

On appeal, the legal determinations of the bankruptcy court are reviewed de novo and its findings of fact are reviewed under a clearly erroneous standard. See In re Financial News Network Inc., 980 F.2d 165, 169 (2d Cir. 1992); In re Ionosphere Clubs, Inc., 184 B.R. 648, 653 (S.D.N.Y. 1995) and authorities cited therein. The district court reviews a bankruptcy judge's

---

[1] In his initial appellate submission, dated October 20, 2004, Murphy argued the merits of the excusable neglect argument. By Order dated November 12, 2004, the Court declined to exercise its discretion to consider factors outside the record presented and considered by the Bankruptcy Court and stated that the Court's review of the excusable neglect argument would be limited to the Bankruptcy Court's decision not to entertain the argument. (Order, dated November 12, 2004, at 1.) Murphy thereafter filed an amended brief on appeal.

interpretation of its own orders for abuse of discretion. In re Aquatic Development Group, Inc., 352 F.3d 671, 678 (2d Cir. 2003).

*Use of New York Law to Interpret the Rolling Bar Date Order*

Appellants argue that the Bankruptcy Court improperly relied on New York law to interpret its May 23, 2000, Order. The gravamen of their argument is that the Bankruptcy Court should have applied claim accrual principles, based on appellants' knowledge of the cause of their injuries in addition to awareness of their physical injuries, in determining when their injuries became manifest within the meaning of the May 23, 2000, Rolling Bar Date Order. Appellants contend that, under federal maritime law (specifically, the Jones Act) and Florida state tort law[2], asbestos-related claims such as those asserted here accrue for statute of limitations purposes only when the claimant is both aware that he has suffered a physical injury and is aware that asbestos was the cause of the injury.

The fundamental flaw in Appellants' argument is that Judge Gonzalez was not construing or applying a statute of limitations in making his determination as to whether their claims were barred under the May 23, 2000, Order. Rather, he was construing the terms of that prior court order, which was entered pursuant to the claims administration powers granted to the Bankruptcy Court by federal bankruptcy law. Indeed, the Bankruptcy Code's definition of "claim" is much broader than non-bankruptcy concepts of accrued claims ripe for suit and encompasses, inter alia, rights to payment "whether or not such right is reduced to judgment,

---

[2] Appellant Murphy argues for the application of Florida law based on his residence in Florida at the time of his diagnosis.

liquidated, unliquidated, fixed, contingent, matured [or] . . . unmatured." 11 U.S.C.A. § 101(5)(A) (West 2005). Under the Bankruptcy Code, the definition of a claim is to be given the broadest possible application. See In re Manville Forest Prods. Corp., 209 F.3d 125, 128 (2d Cir. 2000) ("Congress gave the term claim a broad definition and 'contemplate[d] that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'") (quoting In re Chateaugay Corp., 944 F.2d 997, 1003 (2d Cir. 1991)). Claims, no matter how remote or contingent, must be asserted within the context of the bankruptcy proceeding lest the debtor be discharged from liability in connection with them. See, e.g., In re Johns-Manville Corp., 57 B.R. 680, 687 (Bankr. S.D.N.Y. 1986).

Judge Gonzalez's Rolling Bar Date Order recognizes that a certain class of claimants would not even show symptoms of asbestos-related injuries until after the date of the Order. In that Order, he exercised his power to "fix . . . the time within which proofs of claim . . . may be filed"[3] so that such future claimants could assert their claims in a manner consistent with the just and efficient administration of the estate.

A bar date can be likened to a statute of limitations in that both should be strictly observed. See In re Enron Corp., 298 B.R. 513, 520 (Bankr. S.D.N.Y. 2003). However, as Judge Gonzalez recognized in his decision expunging Appellants' claims,"[s]ince Bankruptcy Rule 3003(c) provides the bankruptcy court with discretion to extend the bar date for filing late Chapter 11 proofs of claim, the rule is clearly not a true statue of limitations." (Expungement Opinion at 22-23.)

Thus, it is proper interpretation of Judge Gonzalez' Rolling Bar Date Order, rather

---

[3] Fed. R. Bankr. P. 3003(c).

than concepts of claim accrual, upon which this Court focuses in determining whether Judge Gonzalez erred in applying the manifestation date language of that Order. The Rolling Bar Date Order gave asbestos-related or other late-manifesting bodily injury claimants claims against U.S. Lines 180 days to file a proof of claim "following manifestation of the underlying bodily injury which is the basis for such claim." (Rolling Bar Date Order at 3.) When faced with a question as to the interpretation of the "manifestation of underlying bodily injury" language in the order Judge Gonzalez turned, as he had in an earlier contested matter in the U.S. Lines bankruptcy proceeding involving a similar issue under the Rolling Bar Date Order,[4] to authorities interpreting a New York statute of limitations provision that employs a similar focus on the physical manifestation of an injury (as opposed to its underlying cause) in triggering a limitations period for claims for latent injury. (See N.Y. CPLR § 214-c (McKinney 2006); Expungement Opinion at 23.) Noting that a "central purpose" of the Rolling Bar Date Order was "to provide a uniform time limit for filing proofs of claim . . . in order to offer a predictable mechanism in assisting the Trust to eventually terminate its operations,"[5] Judge Gonzalez found that New York law was a reasonable choice as an interpretive aid because U.S. Lines was situated in New York, most of the places of shipment and discharge were in New York and most merchant mariners thus executed contracts with U.S. Lines in New York, and New York was the forum state. (Expungement Opinion at 23.) This choice was also consistent with the plain language of the Rolling Bar Date Order, which specifies "underlying bodily injury" as the triggering factor.

---

[4] See Memorandum Decision Granting Trust's Motions to Expunge Proofs of Claim, annexed to Siegel Decl., Ex. R, ("Bence Opinion").

[5] Expungement Opinion at 23.

The only relevant issue here is whether Judge Gonzalez' abused his discretion in using New York law to interpret "manifestation" in his Rolling Bar Date Order. The Court finds that he did not. It made sense to use New York law because of the numerous contacts the state had with this case. Moreover, the plain language of the Order contemplated a bar date period beginning at the occurrence of the underlying injury. It thus was reasonable to use New York law as a guide because New York's statute of limitations contemplates a similar notion of manifestation. See N.Y. CPLR § 214-c (McKinney 2003); Whetherill v. Eli Lilly & Co., 89 N.Y. 2d 506, 513 (N.Y. 1997). Because claim accrual for non-bankruptcy statute of limitations purposes is not at issue, Appellants' choice of law arguments are inapposite.

*Timeliness of White's and Keating's Claims under the Rolling Bar Date Order*

White and Keating argue that their claims were timely filed even if the manifestation clause of the Rolling Bar Date Order is interpreted using New York law.

The Bankruptcy Court expunged Keating's and White's claims, finding that each individual was aware of a primary symptom of his asbestos-related injury more than 180 days prior to his filing of a claim. (Expungement Opinion at 25-26.) Specifically, Judge Gonzalez found that White was aware of a major symptom of his mesothelioma by reason of the presence of a "large pleural effusion coupled with a possible lung mass, as well as experiencing shortness of breath over three weeks prior to his admission to the hospital." (Id. at 27.) Similarly, Judge Gonzalez found that Keating was aware of a lung mass, which was a "manifestation of a consequential symptom or physical condition" of his asbestos-related lung cancer. (Id. at 25-26.)

The Rolling Bar Date Order provides that all future claimants must file a claim

"before the 181st day following manifestation of the underlying bodily injury which is the basis for such Claim." (Rolling Bar Date Order at 3.) Similarly, under New York law, "the time for bringing the action begins to run . . . when the injured party discovers the primary condition on which the claim is based." Wetherill v. Eli Lilly & Co., 89 N.Y. 2d 506, 509 (N.Y. 1997); see N.Y. CPLR § 214-c (McKinney 2003). New York's concept of primary condition discovery requires a showing of a manifestation of a significant classic symptom of the specific occupational related disease. Cochrane v. A C and S, Inc. et al., No. 92-8841, 1998 WL 642719 at *8 n.1 (Sept. 18, 1998 S.D.N.Y.). An unqualified diagnosis of the cause of the symptoms or plaintiff's understanding of the cause of the symptoms is not, however, necessary. Id. at 3. "Once recognizable symptoms of a condition are sufficiently present, the limitations period begins to run." Id.

White and Keating argue that the symptoms cited by Judge Gonzalez are indicative of a number of illnesses or even no illness and that Judge Gonzalez erred in concluding "that these symptoms are symptoms of the 'primary condition' or are 'classic symptoms' of [an asbestos-related disease.]" (Keating Br., 17.) Appellants' arguments are focused chiefly on a medical report that was presented to the Bankruptcy Court but has not been made part of the record on appeal. The Court has, however, reviewed the extensive quotations from that report in Appellant's brief on appeal, as well as the decision below and the medical reports that have been included in the record on appeal, and finds that the Bankruptcy Court's conclusion that White and Keating's relevant physical injuries were symptoms of asbestos-related disease and first manifested more than 180 days before they filed their respective proofs of claim is not clearly erroneous as a factual determination and that the court's determination that the claims were

untimely is not incorrect insofar as it constitutes an interpretation of the terms of the Rolling Bar Date Order.

*The Burden of Proof on the Issue of Timeliness*

Keating and White contest the Bankruptcy Court's analysis of the parties' respective burdens of proof in connection with their filings of proofs of claim. Bankruptcy Rule 3001(f) provides the starting point for determining who carries the burden when a proof of claim is filed. Fed. R. Bankr. P. 3001(f) (West 2005). Judge Gonzalez noted that, under this rule, a properly filed proof of claim "constitutes prima facie evidence of the validity and amount of the claim." (Expungement Opinion at 24.) He also recognized that, under section 502(a) of the Bankruptcy Code, unless a party objects to a proof of claim, it is deemed allowed. (Id.) Citing In re St. Johnsbury Trucking Co., Inc., 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997), Judge Gonzalez reasoned that, once a party negates the prima facie validity of a proof of claim, the burden shifts back to the claimant, who then bears the ultimate burden of persuasion. (Expungement Opinion at 24.) Judge Gonzalez determined that, while Appellants Keating and White presented prima facie claims, the Trust sufficiently negated the claims and Appellants did not carry their ultimate burden of showing the claims were timely filed. (Id. at 25-27.)

Keating and White argue that Judge Gonzalez improperly relied on In re St. Johnsbury Trucking Co., Inc., and should have relied, instead, on In re Admetric Biochem, Inc., 284 B.R. 1 (Bankr. D. Mass. 2002). Appellants argue that the former case involves a tax claim and is therefore not comparable to this case. Appellants also suggest that In re Admetric Biochem, Inc. stands for the proposition that, when dealing with statute of limitations or other

affirmative defenses, the burden does not shift back to claimants after the party has rebutted a prima facie claim; rather, the opposing party has the ultimate burden of disproving the timeliness of the claim.

It is important to recognize that burdens of proof apply in the bankruptcy context as they would in a non-bankruptcy context. See Raleigh v. Illinois Department of Revenue, 530 U.S. 15, 20 (2000). In this case, the issue is not the merits of the personal injury claims but their timeliness under the Rolling Bar Date Order. While a rolling bar date pursuant to Rule 3003(c) is obviously unique to bankruptcy, an analysis of the burdens of proof in the statute of limitations context provides the most relevant non-bankruptcy equivalent. Under New York law, the party invoking a statute of limitations bears the burden of proof for establishing such an affirmative defense. See Bano v. Union Carbide Corp., 361 F.3d 696, 710 (2d Cir. 2004). However, if the defendant demonstrates that the claim is untimely, the burden shifts to the plaintiff to show that its comes within an exception to the time bar. See Pompa v. Burroughs Welcome Co., 259 A.D.2d 18, 22 (3d Dep't 1999); see also Transpac Drilling Venture 1982-12 v. Commissioner of Internal Revenue, 147 F.3d 221, 224 n.5 (2d Cir. 1998) (In federal statute of limitations case, "[a]lthough reliance on a statute limitations is generally an affirmative defense, we believe that petitioner's prima facie showing that the three-year limit had run properly shifted the burden to the respondent to invoke one of the exceptions."). Contrary to Appellants' suggestion, this burden-shifting analysis is consistent with In re Admetric Biochem, Inc., where the court held that, "if the trustee succeeds in establishing [its affirmative defense] . . . the ultimate burden of proving the validity of its claim by a preponderance of rests on the claimant." In re Admetric Biochem, Inc., 284 B.R. at 7. Judge Gonzalez' determination that claimants bore the ultimate burden of proving the

validity of their claim was, accordingly, correct, as was his determination that Appellants had failed to carry their burden.

*Manifestation as a Core Issue*

Murphy argues that manifestation was not a core issue, as Judge Gonzalez concluded, but rather an issue that should have been decided by a jury at the district court level. There are two related but separate issues here: first, whether the issue of manifestation was a core issue upon which Judge Gonzalez had authority pursuant to 28 U.S.C. section 157(b)(1) to enter a judgment expunging Murphy's personal injury claim as untimely and, second, whether Murphy is entitled as a matter of law to a jury trial on the issue of when his claim manifested. See generally In re Ben Cooper, 896 F.2d 1394 (2d Cir. 1990) (finding that core proceeding determination is separate from jury trial determination).

The Court finds that Judge Gonzalez had the authority to enter a judgment based on his determination of this issue. Bankruptcy courts may hear and enter judgments on all "core proceedings," a category of proceedings that is specifically defined to include determinations on the "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B) (West 2005). This District "has recognized the authority of the Bankruptcy Court to apply statute of limitations and related dispositive legal defenses in the disallowance of claims, including personal injury claims." In re U.S. Lines, Inc., 262 B.R. 233, 234 (S.D.N.Y. 2001), relying on In re Chateaugay Corp., 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1997), aff'd in part and rev'd on other grounds, 961 F.2d 378 (2d Cir. 1992). Judge Gonzalez had the authority to determine when the claim manifested because the question of timeliness was a threshold question pertaining to the

allowance of the claim. Murphy's invocation of the 28 U.S.C. section 157(b)(2)(B) core jurisdiction exception for estimation of contingent or unliquidated personal injury tort claims is unavailing, because the issue here is not the estimation of damages but, rather, whether the claim was timely filed. The statutory exception does not "deprive bankruptcy courts of any jurisdiction to disallow personal injury [claims.]" In re Chateaugay Corp., 111 B.R. at 75. "A bankruptcy court has the right and duty to disallow claims as a threshold matter, if no legal basis for the claim exists against the debtor." Id. at 77 (emphasis in original).

The Court also finds that Murphy is not entitled to a jury trial on the issue of when his claim manifested. Murphy notes correctly that section 1411 of the Federal Judiciary Code preserves the right to a jury trial in the bankruptcy context with regard to personal injury and wrongful death cases. See 28 U.S.C.A. §1411 (West 2005). However, the manifestation date determination at issue goes not to the merits of his personal injury claim but, rather, to whether the claim can be pursued in the context of the U.S. Lines bankruptcy proceeding. A claimant waives a right to a jury trial when filing a proof of claim against a debtor in bankruptcy court on those issues that directly bear on the allowance of a claim or are integral to the bankruptcy process. See Langenkamp v. C.A. Culp, 498 U.S. 42, 44-45 (1990); Germain v. Connecticut National Bank, 988 F.2d 1323, 1329 (2d Cir. 1993) ("It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process.").

Murphy was not entitled to a jury trial on the issue of manifestation because the timing of the claim was integral to determining whether it could be allowed. In re Hooker Investments, Inc., L.J., 937 F.2d 833, 840 (2d Cir. 1991) (finding that "[a] bar order does not

function merely as a procedural gauntlet, . . . but as an integral part of the reorganization process) (internal quotations and citation omitted); See also In re Standard Insulations, Inc., 138 B.R. 947, 951 (Bankr. W.D. Mo. 1992) (Though 28 U.S.C. §1411 provides for jury trials for personal injury claims, "the court concludes from the statutory language that jury trials are not required for personal injury claims at the claims allowance stage."), abrogration on other grounds recognized by In re Broadmoor Country Club & Apt., 158 B.R. 146 (Bankr. W.D. Mo.1993).

*Due Process Argument*

Murphy argues that the application of the Rolling Bar Date to defeat his claim violated his due process rights under the Constitution because the Rolling Bar Date Order was interpreted to measure the 180-day limitation period from the physical manifestation of the asbestos-related injury rather than from the diagnosis of asbestos-related injury or other identification of the link between the physical injury and exposure to asbestos.[6]

Murphy's due process argument fails because the language of the Rolling Bar Date Order itself was plainly sufficient to put future claimants on notice that the initial physical manifestation of disease, as opposed to an asbestos-related diagnosis, is the operative event for Rolling Bar Date purposes. The Order specifically provided that claims had to be filed "before the 181st day following manifestation of the underlying bodily injury." (Rolling Bar Date Order at

---

[6] Murphy also argues that future claimants like himself were not adequately represented in connection with the formulation of the Rolling Bar Date Order. Because this issue was not raised before the Bankruptcy Court (see Siegel Decl., Ex. P; Murphy's Reply Br. at 7 n.3), the Court considers it waived and declines to review it. See Diesel v. Town of Lewisboro, 232 F.3d 92, 107-8 (2d Cir. 2000) (declining to review an argument because it was raised for first time on appeal and therefore waived).

3.) Furthermore, Murphy was represented by counsel in a Texas state court action against one of the debtors and others, seeking damages for an asbestos-related injury, by February 2003 at the latest[7] and thus clearly had both knowledge that he had an asbestos-related claim and opportunities to seek any necessary clarification well before the Rolling Bar Date expired as to his claim.

*Excusable Neglect Argument*

Murphy argues that the Bankruptcy Court erred in not considering his excusable neglect argument. Murphy filed a supplemental memorandum arguing excusable neglect one day before the adjourned Bankruptcy Court hearing in the case. Judge Gonzalez declined to consider the argument because it was untimely filed.

Local Bankruptcy Rule 9006-1(b) requires that all "answering papers shall be served so as to ensure actual receipt not later than three days before the return date." S.D.N.Y. L.B.R. 9006-1(b) (2005). Judges have discretion to decide when "a departure from [a court's] Local Rules should be excused or overlooked." Cf. Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1048 (2d Cir. 1991) (discussing the inherent power of district court judges to depart from the requirements of the local rules). The applicable standard is whether following the local rules would "cause an unjust result." Id. In making this determination, courts should consider a number of factors including "the facts of the case, the content and goal of the Local Rules, the legal precedent on analogous issues, and the letter and legislative intent of any relevant statute." Id. Local Bankruptcy Rule 9006-1(b) is an adaptation of Southern District Local Civil Rule 6.1

---

[7] See Siegel Decl., Ex. U.

(see Comment to Southern District Bankruptcy Rule 9006-1(b) (2005)), the purpose of which is to "protect defendants and plaintiffs alike from being ambushed." Chieco v. International Brotherhood of Teamsters, 175 F.R.D. 467, 469 (S.D.N.Y. 1997). A district court reviews decisions within the discretion of a bankruptcy court for abuse of discretion. See e.g. In re Integrated Resources, Inc., 157 B.R. 66, 72 (S.D.N.Y. 1993).

Given the factual circumstances of the instant matter and the purpose of Rule 9006-1(b), the Court finds that Judge Gonzalez did not abuse his discretion in declining to consider the merits of Murphy's excusable neglect argument. Murphy filed his supplemental brief nearly a week after the original January 28, 2004, return hearing date and one business day before the actual hearing on February 4, 2004. (See Expungement Opinion at 10.) Murphy proffered no reason for his belated attention to this issue, which had been the subject of earlier Trust claim-related litigation. (See Bence Opinion at 18-23.) Neither did he seek additional time from the court to file his supplemental memorandum (See Expungement Opinion at 29). Accordingly, the Court finds no basis to overturn the Bankruptcy Court's decision not to consider the excusable neglect argument.

## CONCLUSION

For the foregoing reasons, the June 21, 2004, Order of the United States Bankruptcy Court for the Southern District of New York in Chapter 11 Case Nos. 86B 12238, 86B 12240, 86B 12241 (AJG), expunging Appellants' claims, is affirmed. The Trust's request to

strike portions of Keating's and White's reply brief is denied as moot.

SO ORDERED.

Dated: New York, New York
June 7, 2006

LAURA TAYLOR SWAIN
United States District Judge

Copies mailed 6/07/06 to counsel + Bankruptcy Judge.
Chambers of Judge Swain